THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT REYST,

        Plaintiff,                              Case No. 06-15468

vs.

                                              HONORABLE MARIANNE O. BATTANI
                                              HONORABLE STEVEN D. PEPE

ERIC LANIS,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff filed this action under 42 U.S.C. § 1983 asserting violations of his Eighth Amendment rights based on allegations that Defendant was deliberately indifferent to his serious medical needs. On February 7, 2007, Defendant filed his Rule 56(b) motion for summary judgment claiming that Eleventh Amendment immunity shields him in his official capacities and qualified immunity shields him in his individual capacity (Dkt. #10). After granting Plaintiff an extension of time to respond (Dkt. #15), he filed his response in opposition to Defendant's motion on February 28, 2007 (Dkt. #16). All pretrial matters were referred to the undersigned on December 18, 2006 (Dkt. #7). For the reasons indicated below, it is **RECOMMENDED** that Defendant's motion for summary judgement be **GRANTED.**

### I.    BACKGROUND

      Plaintiff is a prisoner at the Standish Maximum Correctional Facility (SMF) in Standish, Michigan. He filed his pro se prisoner civil rights complaint pursuant to 42 USC § 1983 on

December 11, 2006, asserting an Eighth Amendment deliberate indifference claim against Defendant, Dr. Eric Lanes. Defendant is a licensed psychologist employed by the MDOC. Plaintiff avers inadequate medical treatment for depression. He does not aver capacity but seeks damages and injunctive relief.

Defendant currently works at the St. Louis Correctional Facility but worked at SMF at all times relevant to this lawsuit and had contact with Plaintiff on four occasions in 2005 (Dkt. #10, Ex A at pp. 2-3, ¶¶ 1- 4). The first contact occurred on January 18, 2005, in response to a request for health care services wherein Plaintiff stated, "I would like to see the psych doctor to be placed back on the anti-depressants for the depression that I have been having." Defendant reviewed the inmate's health care and institutional records, gathered information from custody staff, and performed an interview with mental status examination. He found no evidence of the presence of a major mental disorder – including signs/symptoms of depression – at that time and determined that a referral to Out Patient Mental Health (OPMH) was not indicated at the time.[1]

Defendant explained the criteria necessary for OPMH referral and informed Plaintiff that he did not meet the criteria at that time; and, that Defendant would be available for further contact and assessment (Dkt. #10, Ex. A at pp. 3-4, ¶¶ 5-7). Yet, Plaintiff was not amenable in engaging in one-on-one cognitive behavior intervention to address his concerns about being housed in segregation at that time. Defendant further explained to Plaintiff that although he had a long history of being on the OPMH caseload, due to the fact that he did not present with any

---

[1] Under MDOC Policy Directive 04.06.180 "Mental Health Services," an inmate will be referred for psychiatric treatment "[i]f it is determined that that the prisoner may be suffering from a serious mental illness/severe mental disorder" (Dkt. #10, Ex. B at ¶ P).

current signs/symptoms of major mental disorders at the time of their contact, Plaintiff did not meet the criteria for OPMH. Defendant received no further correspondence from Plaintiff after Plaintiff declined further contact.

Defendant saw Plaintiff three additional times thereafter in the course of scheduled, routine evaluations of the mental status of prisoners in segregation (Dkt. #10, Ex. C at p. 11, ¶ DDD). Those contacts occurred on March 1, 2005; May 17, 2005 and August 17, 2005; and no evidence of a major disorder was observed or reported on those occasions. Plaintiff appeared to be functioning adequately in segregation (Dkt. #10, Ex. A, pp. 2-4).

## II. ANALYSIS

### A. Standards Of Review

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

> showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

    **B.**    **Factual Analysis**

    **1.**    *Eleventh Amendment Immunity Bars the Official Capacity Claim*

The Eleventh Amendment to the United States Constitution bars suits against states and their departments or agencies in federal court. *Alabama v Pugh*, 438 US 781 (1978); *Quern v Jordan*, 440 US 332 (1979).[2] The jurisdictional bar applies regardless of the nature of the relief sought. *Missouri v Fiske*, 290 US 18, 27 (1933); *Dugan v Rank*, 372 US 609, 620 (1963). Absent a waiver of valid abrogation, the Eleventh Amendment bars an official capacity suit against the defendant as an employee of the state while acting in his official capacity as a psychologist for MDOC. Absent a waiver of valid abrogation, the Eleventh Amendment bars an official capacity suit against the defendant.

The State of Michigan has not waived its right to sovereign immunity under the Eleventh Amendment in civil rights actions in the federal courts. *Abick v Michigan*, 803 F2d 874, 877 (6th

---

[2] An official capacity lawsuit is the same as a lawsuit against the State and is, therefore, also barred by Eleventh Amendment immunity. *Brandon v Holt*, 469 US 464, 471 (1985).

Cir. 1986). Further, Congress can only abrogate a State's immunity through an unequivocal expression of its intent to do so and pursuant to a valid exercise of power. *Seminole Tribe of Florida v Florida*, 517 US 44 (1996). Although 42 USC § 1983 was adopted pursuant to § 5 of the Fourteenth Amendment, Congress did not indicate its intent to abrogate state sovereign immunity and therefore, Eleventh Amendment immunity is preserved. *Quern v Jordan*, 440 US 332, 345 (1979).

An exception applies to suits against state officials for prospective injunctive relief. *Ex parte Young*, 209 US 123 (1908). A state's sovereign immunity may be abrogated for the sole purpose of ending continuing violations of federal law by governing future conduct. *Edelman v Jordan*, 415 US 651 (1974). Yet, while Plaintiff argues that a preliminary injunction should issue prohibiting Defendant from continuing to violate MDOC policies and the U.S. Constitutional, there are no facts in this case demonstrating a continuing violation of federal law. Because Plaintiff has not averred facts warranting the abrogation of the State of Michigan's sovereign immunity, the Eleventh Amendment bars an official capacity claim.

When the Eleventh Amendment applies, the courts are without subject matter jurisdiction to determine the claim. *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 336 (6th Cir.1990). Plaintiff argues that Defendant's claim of entitlement to Eleventh Amendment immunity is contrary to 42 U.S.C. § 2000d-7(a)(1)(2) because states waive their Eleventh Amendment Immunity to Rehabilitation Act claims by accepting federal funds (Dkt. #16, p. 2). Yet, Plaintiff has not filed a claim under the Rehabilitation Act, but rather under 42 U.S.C. § 1983 asserting violations of his Eighth Amendment rights (Dkt. #16, ¶¶ 1-2). The Eleventh Amendment case law is clear that a state and its agencies cannot be sued under section 1983 consistent with the

5

Eleventh Amendment. *Quern* 440 U.S. at 339-40. Accordingly, Plaintiff's claim against Defendant in his official capacity fails due to lack of jurisdiction.

### 2. *Qualified Immunity Bars the Individual Capacity Claim*

Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995). A Court faces a two part test when ruling upon a qualified immunity issue. The initial inquiry must be whether, considered in the light most favorable to the party claiming injury, the facts establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If the facts alleged would violate a constitutional right, the second question is whether that constitutional right was clearly established at the time. *Id.*; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998).

Plaintiff who avers a longstanding history of depression, sues Defendant on a theory of deliberate indifference. Yet, the elements of an Eighth Amendment deliberate indifference claim, as established under Supreme Court and Sixth Circuit precedent, are lacking in this case.

Deliberate indifference to the serious medical needs of prison inmates constitutes the unnecessary and wanton infliction of pain violative of the inmate's Eighth Amendment rights. An inmate suing under an Eighth Amendment deliberate indifference theory must demonstrate that his medical needs were serious and that that defendant acted with deliberate indifference to those serious medical needs. *Estelle v Gamble*, 429 US 97, 104-105 (1976). The Supreme Court has explained that deliberate indifference exists only when a defendant was aware of facts from which the inference could be drawn that a substantial risk of harm exists and the defendant drew the inference. *Farmer v Brennan*, 511 US 825, 837 (1994).

A medical need is serious if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Carter v Chambers*, 408 F3d 305 (6th Cir. 2005), *Monmouth County Corr Inst Inmates v Lanzaro*, 834 F2d 326, 347 (3rd Cir. 1987), cert denied, 486 US 1006 (1988). As stated by the United States Court of Appeals for the Sixth Circuit, "[k]nowledge of the asserted serious needs or circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v Madison County Fiscal Court*, 22 F3d 653, 660 (6th Cir. 1994). A defendant's knowledge of a serious risk of harm can be inferred from circumstantial evidence such as an inmate's exhibition of commonly known symptoms of a serious malady. *See Carter*, 408 F3d at 312.

The pleadings in this case do not support an Eighth Amendment deliberate indifference claim. There is no indication that Plaintiff suffered a "serious medical need" at the time of his contact with the defendant in 2005. Defendant first saw Plaintiff on January 18, 2005, after Plaintiff submitted a request for health care services. Defendant's assessment were as follows:

7

Subjective:
"I've got a new case with the feds."

Objective:

Current Mental Status:
Prisoner seen in response to his kite of 1/12/05 (rec'vd 1/14/05) stating a wish to be on medication. Per unit staff: prisoner's been eating, sleeping, and behaving unremarkably. Alert and fully-oriented with good attention/concentration. Maintains eye contact throughout. Grooming and hygiene are good and cell is in good order. Memory good for recent and remote events. Short term memory is good. Judgment/reasoning and impulse control is apparently intact. No psychomotor agitation/retardation in evidence—prisoner denies poor energy. Speech is WNL [within normal limits], spontaneous, and fluent. Affective range is good, smiles and reacts to and uses humor appropriately; mood reported as "mad." Organized, linear, and coherent. Denies unusual perceptual experiences presently—there has been no evidence of internal preoccupation, responding to internal stimuli or possible responding to v/h [visual hallucinations]. No hypervigilance, paranoia, or delusion thinking in evidence. Info. gathered from staff in contact with prisoner also does not suggest any psychotic process or mood distress. Denies suicidal/assaultive ideation/intent/plan presently.

Assessment:
No evidence of major mental disorder presently. Appears to be functioning well in present seg. situation. Spent contact discussing his alleged new charge (federal case, perhaps, with 4th Habitual possible upon conviction). Record reviewed in its entirety. Clinical consensus has been: Axis II pathology and no Axis I Dx. Prisoner has a long history of behavioral problems dating to childhood, a long history of polysubstance dependence (and associated med-seeking behavior), a brief history with OMPH (who never [sic] truly saw prisoner as mentally ill – he was continually noted to seek benzodiazepines), MH history in the community was likely associated with his longterm and serious polysubstance dependence, has hx of numerous outpatient/inpatient substance abuse Tx contacts in the community, has a long history of engaging in SIB [self injurious behavior] and making threats of such in order to facilitate transfers, preferred housing, etc. (consistently noted to swallow razors which he has taped in order to avoid internal injuries). Most recent OPMH psychiatric eval (7/2002) indicated no Axis I Dx. Has received Dxs of malingering in the past. Presentation this date is consistent w/past assessments (he immediately began making overtures re: transfer, hospitalization, medications).

Plan:
TNR [treatment not required] presently. May kite PRN. No referral to OPMH

indicated at this time.

(Dkt. #10, Ex A(1)).

Three subsequent contacts occurred as a part of Plaintiff's regular administrative segregation review, and Plaintiff exhibited no symptoms indicating the need for a referral for the treatment Plaintiff was seeking at any of those times (Dkt. #10, Ex. A at ¶ 7 and Ex. A(2)-A(4)). There are no facts present in this case that would support a finding that Plaintiff had a "serious medical need" during any of his contacts with Defendant in 2005. Nor can Plaintiff present any set of facts demonstrating Defendant's "knowledge of the asserted serious needs" *See Horn*, 22 F3d at 660. Although the plaintiff has a past history of psychological or psychiatric intervention, there was an absence of any signs or symptoms indicating a major mental disorder during his contacts with Defendant. *See Carter*, 408 F3d at 312.

In this case, clearly established law dictates that Plaintiff demonstrate the existence of a serious medical need and Defendant's knowledge and disregard of that need. Plaintiff has not alleged or presented facts sufficient to meet that burden. His Eighth Amendment deliberate indifference claim therefore must fail as a matter of law. Accordingly, Defendant is entitled to summary judgement.

### III. RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Defendant's motion for summary judgement be **GRANTED.** The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: May 31, 2007                                                s/Steven D. Pepe
Ann Arbor, Michigan                                               United States Magistrate Judge

CERTIFICATE OF SERVICE

      I hereby certify that on <u>May 31, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Julia R. Bell.</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Scott Reyst #223708, Alger Maximum Correctional Facility, P.O. Box 600, Munising, MI 49862</u>

                                                <u>s/ James P. Peltier</u>
                                                James P. Peltier
                                                Courtroom Deputy Clerk
                                                U.S. District Court
                                                600 Church St.
                                                Flint, MI 48502
                                                810-341-7850
                                                pete_peltier@mied.uscourts.gov